**This order is SIGNED.**

**Dated: September 14, 2023**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*rdr*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>GREG P. TERRY,<br><br>    Debtor. | Case No. 22-22453<br><br>Chapter 13 |
| GREG P. TERRY,<br><br>    Plaintiff,<br><br>v.<br><br>MEB LOAN TRUST II,<br><br>    Defendant. | Adv. Proc. No. 22-02093<br><br>Hon. Kevin R. Anderson |

**MEMORANDUM DECISION ON DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

    Debtor Greg Terry ("Debtor") has not made a payment on his residential mortgage since October 2008. By the same measure, none of the note holders initiated any foreclosure action against the Debtor until Defendant MEB Loan Trust II ("MEB") filed its notice of default and election to sell the Debtor's home in February 2022—over thirteen years after the Debtor's last payment. As a result, the Debtor filed this adversary proceeding seeking a ruling that (1) laches or the applicable statute of limitations bars MEB from enforcing its note and trust deed; and (2) the

trust deed lien should be removed and title to the home quieted in the Debtor's favor. In response, MEB filed a Rule 12(b)(6) motion to dismiss the Debtor's complaint.

The parties briefed the motion, and the Court conducted a hearing on June 5, 2023, at which time the Court took the matter under advisement. After reviewing the Debtor's complaint, the motion, and the parties' memoranda, and after considering the parties' oral arguments and conducting independent research of applicable law, the Court issues the following Memorandum Decision denying MEB's motion.[1]

**I.    FACTS**

When evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the well-pleaded factual allegations in the complaint along with any exhibits attached thereto.[2] The following facts come from the well-pleaded allegations in the Debtor's complaint and its accompanying exhibits.

1.    Since at least 2006, the Debtor has owned the residential real property located at 4036 West Ivy Avenue, Morgan, UT 84050 (the "Home").

2.    On December 21, 2006, the Debtor entered into a home equity loan agreement with First Horizon Home Loan Corporation (the "Lender") that involved a promissory note (the "Note") secured by a trust deed on the Home, which was recorded on December 28, 2006 (the "Trust Deed").

3.    The term of the Note consists of two periods: a ten-year "Draw Period" running from 2007 to 2017 followed by a ten-year "Repayment Period" running from 2017 to 2027.[3]

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed to be findings of fact, and they shall be equally binding as both.

[2] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[3] ECF No. 23, at 21-22, ¶¶ 1, 11. All subsequent references to ECF numbers are to those in this adversary proceeding unless otherwise noted.

4. During the Draw Period, the Debtor could borrow funds up to the credit limit of $46,500.[4] At the same time, the Lender was to send the Debtor monthly billing statements showing the loan balance and requiring a minimum monthly payment to cover accrued interest, costs, etc. However, the Note made clear that these minimum payments would "not repay any of the principal."[5]

5. Ten years later, at the commencement of the Repayment Period in January 2017, the Debtor could no longer borrow funds, and the monthly payment would increase in an amortized amount sufficient to satisfy the loan balance over ten years.[6]

6. While the Note does not list a specific maturity date, the Trust Deed states that all amounts owing under the Note must be repaid "in full no later than January 1, 2027."[7]

7. The Trust Deed provides that the Debtor would be in default if he failed to make any Note payment by its due date.[8]

8. The Debtor concedes that he has not made any Note payments since October 2008.

9. The Trust Deed further provides that if the Debtor defaulted, the Lender would give him notice of the default, which, among other things, would inform him "that failure to cure the default on or before the date specified in the notice **may result in acceleration** of the sums secured by [the Trust Deed] and sale of the [Home]."[9]

---

[4] *Id.* at 22, ¶ 11.
[5] *Id*. at 21, ¶ 7.
[6] *See id.* ¶¶ 3, 7.
[7] *Id.* at 13.
[8] *Id.* at 16, ¶ 18.
[9] *Id.* (emphasis added).

10. Following their execution in December 2006, the Note and Trust Deed have been assigned to various holders, and they are presently held by MEB, who recorded an assignment of the Trust Deed on August 3, 2021.[10]

11. On February 7, 2022, MEB recorded a Notice of Default and Election to Sell the Debtor's Home under the terms of the Trust Deed (the "Notice of Default").[11] The Notice of Default describes the default as the Debtor's "failure . . . to pay the entire unpaid principal balance together with all accrued interest which became due in full on November 27, 2008."[12]

12. The Notice of Default further states that "[u]nder the provisions of the [] Note and Trust Deed, the principal balance is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees."[13]

## II.    PROCEDURAL BACKGROUND

1. On June 29, 2022, the Debtor filed this chapter 13 bankruptcy case, which was before MEB could conduct its trust deed sale of the Home.

2. On July 26, 2022, Select Portfolio Servicing, Inc., as MEB's loan servicer, filed a proof of claim in the total amount of $493,430.45 (the "Proof of Claim").[14] This sum is based on the principal balance of $46,141.77 plus fees costs of $3,414.04 for a subtotal of $49,555.81. The Proof of Claim also asserts a prepetition arrearage of $443,874.64 based on 164 missed monthly payments of $2,692.53 for a subtotal of $441,574.92 plus $2,299.72 in principal and interest. The Proof of Claim indicates that these amounts are all secured by the Trust Deed on the Debtor's Home.

---

[10] *Id*. at 28-34.
[11] *Id*. at 78-79.
[12] *Id.* at 78.
[13] *Id.*
[14] Claim No. 2-1.

3. On October 12, 2022, the Debtor filed this adversary proceeding seeking to have the Note and Trust Deed declared unenforceable and to avoid the trust deed lien on the Home based on various theories, including statute of limitations and laches.

4. On November 8, 2022, MEB filed its motion to dismiss the initial complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").[15]

5. In response to MEB's motion to dismiss, the Debtor twice amended his complaint,[16] resulting in the present complaint filed at ECF No. 23 (the "Complaint"), which is the subject of MEB's present motion under Rule 12(b)(6).[17]

6. The Complaint pleads four causes of action, which together seek disallowance of MEB's Proof of Claim and removal of the lien evidenced by its Trust Deed or, in the alternative, a determination that the balance owing on MEB's secured claim does not exceed $49,555.81.

7. Specifically, the first cause of action seeks disallowance and removal based on expiration of the applicable statute of limitations. The second cause of action seeks to quiet title to the Home in favor of the Debtor based on expiration of the applicable statute of limitations. The third seeks disallowance and removal or reduction of the lien amount based on the doctrine of laches. And the fourth seeks to determine the validity, priority, and extent of MEB's lien against the Home.

### III. ANALYSIS

#### A. The Rule 12(b)(6) Standard to Dismiss for Failure to State a Claim.

Under Rule 12(b)(6), made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012(b), a plaintiff's complaint must contain sufficient facts "to state a claim to relief

---

[15] ECF No. 3.
[16] ECF Nos. 8 and 23.
[17] ECF No. 24.

that is plausible on its face."[18] Facial plausibility exists where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Thus, a complaint must do more than raise a "sheer possibility that a defendant has acted unlawfully."[20] Where the facts in a complaint allow a court to infer no more than "the mere possibility of misconduct," the complainant has not met its burden to show that it is "entitled to relief."[21] In other words, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[22]

The Tenth Circuit has described the *Twombly/Iqbal* standard as "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme] Court stated will not do."[23]

When considering a motion to dismiss under Rule 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true and must view them in the light most favorable to the plaintiff,[24] although this rule does not apply to legal conclusions.[25] In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present

---

[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[20] *Id.* (citing *Twombly*, 550 U.S. at 556).

[21] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[22] *Twombly*, 550 U.S. at 570.

[23] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

[24] *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 556 (10th Cir.1999) (quoting *Yonder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)).

[25] *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678).

at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[26]

    **B.**    **Does the Complaint Plead Sufficient Facts to State a Plausible Claim that the Statute of Limitations Has Run on the Enforcement of the Note and Trust Deed?**

While Rule 12(b)(6) is a matter of federal law, the adequacy of the Complaint's pleadings as to the enforceability of the Note and Trust Deed is assessed under state law.[27] Consequently, "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[28] If the highest state court has not yet issued a decision on the issue in question, "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."[29] "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[30]

While the Note states that it is "governed by applicable Federal law and the law of Tennessee," the Trust Deed is "governed by the law of the state in which the real property is located,"[31] which is Utah, and the parties have stipulated that Utah law applies to this dispute.

---

[26] *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)).

[27] *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[28] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

[29] *Id.* at 1119 (quoting *Commissioner v. Bosch's Estate*, 387 U.S. 456, 465 (1967)).

[30] *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

[31] ECF No. 23, at 24, ¶ 30.

The limitations period for a trust deed is stated in UTAH CODE ANN. § 57-1-34 as "the period prescribed by law for the commencement of an action on an obligation secured by a trust deed." In other words, this code section "plainly requires that a court determine the statute of limitations for foreclosure under a deed of trust by reference to the limitations period on the underlying obligation."[32] Accordingly, under Utah law, the more specific statute of limitations period for a negotiable note under UTAH CODE ANN. § 70A-3-118(1) applies to both a note and its associated trust deed.[33]

Under UTAH CODE ANN. § 70A-3-118(1), "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years **after the due date or dates** stated in the note or, if a due date is accelerated, within six years after the accelerated due date."[34] Utah courts have repeatedly made clear that "the limitations period for nonjudicial foreclosures of trust deeds is six years, triggered either upon the due date provided in the note or the accelerated due date."[35]

The Note does not contain a specific maturity date, but the Trust Deed says the loan must be paid in full by January 1, 2027, which on its face would appear to leave acceleration as the only plausible basis to allege triggering of the statute of limitations. The Debtor argues that the Note

---

[32] *Deleeuw v. Nationstar Mortg., LLC*, 424 P.3d 1075, 1077-79 (Utah Ct. App. 2018).

[33] *Id*. at 1079; *see also Bradsen v. Shellpoint Mortg. Servs.*, 505 P.3d 1109, 1114 (Utah Ct. App. 2022); *Daniels v. Deutsche Bank Nat'l Trust*, 500 P.3d 891, 899 (Utah Ct. App. 2021); *Johnson v. Nationstar Mortgage LLC*, 475 P.3d 140, 144 (Utah Ct. App. 2020) ("This court has recently explained . . . that the 'period prescribed by law' applicable to nonjudicial foreclosures under a trust deed is that set forth in Utah Code section 70A-3-118(1)" (citing *Deleeuw*, 424 P.3d at 1077-79)); *Lewis v. Caliber Home Loans, Inc.*, No. 2:16-cv-01252, 2018 U.S. Dist. LEXIS 8392, 2018 WL 485967, at *1 (D. Utah Jan. 18, 2018); *Hunt v. Citibank N.A. (In re Telford)*, Nos. 16-26661, 17-02120, 2018 Bankr. LEXIS 626 (Bankr. D. Utah Mar. 7, 2018); *Van Leeuwen v. Bank of Am. N.A.*, No. 2:14-cv-00703, 2015 U.S. Dist. LEXIS 129421, 2015 WL 5618048, at *3 (D. Utah Sept. 24, 2015).

[34] UTAH CODE ANN. § 70A-3-118(1) (emphasis added).

[35] *Johnson*, 475 P.3d at 144 (citing UTAH CODE ANN. §§ 70A-3-118(1) and 57-1-34(2); *Deleeuw*, 424 P.3d at 1078-80)).

was accelerated no later than 2010 based on the accounting in the Proof of Claim. MEB counters that the Note was not accelerated until the filing of the Notice of Default in February 2022.

### 1. Was the Note Ever Accelerated?

Whether the Note was accelerated is a mixed question of fact and law, namely: (1) did any holder of the Note take an action in relation to the Debtor's failure to make payments, and (2) was that action legally sufficient to constitute an acceleration of the Note. The Debtor has not alleged that any prior Note holders issued a notice of default under paragraph 18 of the Trust Deed that accelerated the Note. Instead, the Debtor's allegation of acceleration comes from the following calculations and inferences drawn from MEB's accounting attached to the Proof of Claim. As of November 2008 (the month the Debtor stopped making payments), the balance owing under the Note was $46,141.77.[36] The Proof of Claim asserts that the past due balance on the Note as of June 2010, consisting of principal, interest, and escrow, was $53,850.60.[37] But according to the Debtor, that amount exceeds the sum of $46,141.77, together with any interest and fees that could have accrued up to that point.[38] The Debtor takes this fact to mean that the Note was declared due and payable in June 2010, meaning it was accelerated at that time.[39] In the Debtor's own words:

> By June 27, 2010, according to the Defendant's sworn statement [in its Proof of Claim], $53,850.60 was due to Defendant, which is more than the balance, late fees and interest that could have accrued to that point, making the entire Note due and payable no later than June 27, 2010. By the Defendant's own records the note was fully due and payable at the latest, June 27, 2010.[40]

---

[36] ECF No. 23, ¶ 5.
[37] *Id.* ¶ 9.
[38] *Id.* ¶¶ 6-9.
[39] *Id.* ¶ 27.
[40] *Id.* ¶ 9.

Accordingly, the Debtor argues that because the Note was accelerated in June 2010, the six-year statute of limitations ran in June 2016, which was long before MEB took any action to enforce the Note or Trust Deed.

The Complaint also concedes that the Debtor made his last payment on the Note in October 2008. Thus, the Complaint asserts under UTAH CODE ANN. § 70A-3-118(1), with its reference to "due dates or dates," that the statute of limitations commenced with the Note's next payment due date, which was November 2008. Indeed, the accounting included in the Proof of Claim begins assessing full payments in November 2008,[41] even though full payments under the Note's ten-year Repayment Period were not to begin until January 2017.

In response, MEB argues that acceleration under the terms of the Note and Trust Deed requires a written notice containing express acceleration language, and that it is "not a consequence that occurs automatically on a certain date or if the outstanding balance exceeds a certain amount."[42] Indeed, the acceleration clause in the Trust Deed provides that if the Debtor defaults, the lender will issue a notice of the default with a deadline to cure that states if the default is not timely cured, it "**may** result in acceleration of the sums secured by [the Trust Deed]."[43] MEB's assertion that acceleration requires "some clear, unequivocal, affirmative act" is consistent with Utah case law.[44] Accordingly, MEB contends that acceleration is discretionary rather than automatic, and thus it requires an affirmative act on its part. Therefore, MEB argues that without

---

[41] Proof of Claim 2-1, at 4.
[42] ECF No. 24, at 5.
[43] ECF No. 23 at 16, ¶ 18 (emphasis added).
[44] *See Cottage Capital, LLC v. Red Ledges Land Dev.*, 345 P.3d 642, 646 n.4 (Utah 2015) ("In the case of an acceleration provision exercisable at the option of the obligee, the obligee must perform some clear, unequivocal[,] affirmative act evidencing his intention to take advantage of the accelerating provision . . . ." (quoting *Moss v. McDonald*, 772 P.2d 626, 628 (Colo. App. 1988))).

an allegation of an affirmative act of acceleration, the Debtor's statute of limitations cause of action fails to state a claim.

The Debtor's reliance on the accounting in the Proof of Claim is arguably acceleration by inference, and it is arguably inconsistent with the terms of the Trust Deed that speaks of acceleration as discretionary and first involving a written notice of default. However, in its Notice of Default filed on February 7, 2022, MEB represents that "the entire unpaid principal balance together with all accrued interest [under the Note] . . . **became due in full on November 27, 2008**."[45] This statement, along with the allegations in the Complaint, interpreted in the light most favorable to the Debtor, plausibly allege that a prior holder accelerated the Note in November 2008 or in June 2010.

As a result, the Court agrees with the Debtor that, given the length of time that has passed since these events and the number of prior Note holders since 2006, he should be given the opportunity to conduct discovery regarding the acceleration of the Note rather than this issue being summarily resolved by a Rule 12(b)(6) motion. Therefore, the Court denies MEB's motion to dismiss the statute of limitations cause of action with respect to the acceleration question.

## 2. Does the Note Have More Than One Due Date?

The Complaint also makes the alternative argument that the statute of limitations commenced upon the Debtor's last payment in October 2008 and thus expired in November 2014.[46] As noted previously, UTAH CODE ANN. § 70A-3-118(1) provides that an action to enforce a note "must be commenced within six years after the due date **or dates** stated in the note."[47] The Debtor claims that this language refers not only to a note's maturity date but also to the due date

---

[45] ECF No. 23, at 78 (emphasis added).
[46] ECF No. 23, ¶¶ 20-26.
[47] UTAH CODE ANN. § 70A-3-118(1) (emphasis added).

of each monthly payment. The Debtor's argument finds some support in commentary and case law,[48] but these authorities make no reference to Utah law and are not binding on this Court.

However, in a similar case, the United States District Court for the District of Utah did have occasion to interpret and apply Utah law on this question and held that the limitations period does not commence with a missed payment. In *Orvin v. National City Mortgage*,[49] a Utah debtor signed a note and trust deed in 2006 with a due date in 2021. The debtor made her last payment in 2008, and she received a bankruptcy discharge in 2011. The lender never accelerated the note. In 2022, the debtor filed a complaint for a declaratory determination that the statute of limitations for enforcing the note and trust deed had expired based on either the last payment date or the bankruptcy discharge date. As in this case, the lender sought dismissal under Rule 12(b)(6) arguing that in the absence of an acceleration, the statute of limitations did not commence until the note's due date in 2021. Judge Nuffer agreed, holding that neither the missed payment nor the debtor's discharge triggered the statute of limitations. Thus, under the plain language of UTAH CODE ANN. § 70A-3-118(1), the statute of limitations to enforce the trust deed "does not begin to run until the date the debt became due, or if accelerated, the accelerated due date."[50]

The Court believes that *Orvin* is the correct interpretation of UTAH CODE ANN. § 70A-3-118(1), and that it aligns with how the Utah Supreme Court would resolve the issue. Requiring a

---

[48] *See* 2 NEGOTIABLE INSTRUMENTS UNDER THE UCC § 5.02(b), Matthew Bender & Co., No. 89 (2023); *Pramco II, L.L.C. v. Childers*, No. 02-1248, 2005 U.S. Dist. LEXIS 18164, 2005 WL 2001157, at *8 (C.D. Ill. Aug. 9, 2005); *Knutkowski v. Cross*, Civil Action No. 4889-VCG, 2014 Del. Ch. LEXIS 206, 2014 WL 5106095, at *8 (Del. Ch. Oct. 13, 2014).

[49] *Orvin v. Nat'l City Mortg.*, --- F.Supp.3d ----, No. 4:22-cv-00064-DN-PK, 2023 U.S. Dist. LEXIS 68746, 2023 WL 2992453 (D. Utah Apr. 18, 2023), *appeal docketed*, No. 23-4070 (10th Cir. May 18, 2023).

[50] *Id*. at *9 (citing UTAH CODE ANN. § 70A-3-118(1)); *see also Norton v. Wells Fargo Bank, N.A.*, No. 2:16CV1185DAK, 2017 U.S. Dist. LEXIS 45905, at *8 (D. Utah Mar. 28, 2017) ("There is no basis under the UCC statute of limitations for finding that the statute of limitations began to run with the first defaulted payment."); *Downing v. Reliant Loan Servicing, LLC (In re Downing)*, 640 B.R. 681, 687 (Bankr. N.D. Miss. 2022) ("Mississippi courts have rejected the argument that the [UCC 3-118] statute of limitations begins running upon default. . . . [A]bsent acceleration, the limitations period begins to run upon maturity.").

lender to accelerate a note and foreclosure on the associated trust deed within six years of the first missed payment or risk being barred from collecting all or part of its note is inconsistent with typical terms of trust deed notes, which run for decades rather than a handful of years. Further, the Court sees benefits to lenders by allowing them the flexibility to determine when and under what circumstances they will accelerate a note, along with benefits to borrowers if the note is not accelerated and foreclosed so they can remain in a home and use the remaining loan term to work out a cure of the missed payments.[51] Forcing a lender to accelerate and foreclose a note within six years of the first missed payment would eliminate this flexibility to the detriment of both parties.

As to the phrase "due date or dates stated in the note," the Court notes that UTAH CODE ANN. § 70A-3-108 defines "payable at a definite time" as including an "extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event." This explains how a note could have multiple due dates; thus, the Court's interpretation is not inconsistent with the language of the statue.

For these reasons, the Court concludes that under UTAH CODE ANN. § 70A-3-118(1), the Note has a single due date of January 1, 2027.[52] Therefore, the Court holds that the Debtor's failure to make payments starting in 2008 did not, of itself, trigger the commencement of the statute of limitations and thus cannot support a claim to remove the Trust Deed lien from the Home. However, because the Debtor's statute of limitations cause of action is also based on an asserted acceleration of the Note, the Court will not at this time dismiss this cause of action. Nonetheless,

---

[51] *See Norton v. Wells Fargo Bank, N.A.*, No. 2:16CV1185DAK, 2017 U.S. Dist. LEXIS 45905, at *8 (D. Utah Mar. 28, 2017) (noting that not requiring a lender to accelerate upon the first missed payment inured to the borrower's benefit by allowing time to complete a loan modification to cure the arrearage).

[52] Even if the Court were to follow the cases tying the statute of limitations to a missed payment, it would likely only afford the Debtor partial relief in that MEB would nonetheless hold an enforceable claim for the 72 monthly payments owing after June 29, 2016 (six years prior to the petition date), and then the 65 payments owing from the petition date through the Note's maturity date of January 1, 2027. Further, with the continued enforceability of these amounts under the Note, the Trust Deed would likewise remain a foreclosable lien against the Home.

in prosecuting the statute of limitations argument, the law of the case will preclude the Debtor from pursuing his argument that a missed monthly payment, without more, commences the statute of limitations.

### C. Has the Debtor Pleaded Sufficient Facts to Support a Plausible Claim to Relief Under the Doctrine of Laches?

Laches is an equitable doctrine,[53] and is therefore subject to the principles governing the application of equitable relief, *e.g.*, "he who seeks equity must do equity," and "he who comes into equity must come with clean hands."[54] In particular, the unclean hands doctrine demands that "a party who comes into equity for relief must show that his conduct has been fair, equitable, and honest as to the particular controversy in issue," and such a party "will not be permitted to take advantage of his own wrongdoing."[55] Moreover, "it is inherent in the nature and purpose of equity that it will grant relief only when fairness and good conscience so demand."[56]

Consequently, the Court has concerns whether Utah's law on laches can preclude MEB's enforcement of the Note and Trust Deed when the Debtor has knowingly failed to make payments.[57] While it is true that the Utah Supreme Court in *Insight Assets, Inc. v. Farias* applied laches to bar a creditor from foreclosure, the facts of that case are materially different from those

---

[53] *Estate of Price v. Hodkin*, 447 P.3d 1285, 1289 (Utah Ct. App. 2019). In a decision from an earlier era, the Utah Supreme Court used more elevated language to describe the doctrine's foundations: "The doctrine of laches . . . rests upon the purest principles of equity." *Jones Min. Co. v. Cardiff Min. & Mill.*, 191 P. 426, 429 (Utah 1920).

[54] *Jones Min. Co.*, 191 P. at 429 (citation omitted).

[55] *Goggin v. Goggin*, 299 P.3d 1079, 1097 (Utah 2013) (quoting *and* citing 27A AM.JUR.2D *Equity* § 98 (2012)).

[56] *Id.* (quoting *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976)).

[57] In addition, laches is subject to "the practically invariable"—though not absolute—"rule that laches cannot be a defense before the statutory limitation has expired." *Insight Assets, Inc. v. Farias*, 321 P.3d 1021, 1025 (Utah 2013) (quoting *F.M.A. Fin. Corp. v. Build, Inc.*, 404 P.2d 670, 672 (Utah 1965)). Therefore, if the Debtor's statute of limitations cause of action fails, his ability to obtain relief under the doctrine of laches decreases substantially. Since the Court has determined that the statute of limitations cause of action states a claim and may proceed, the question of whether it ultimately fails and therefore subjects the Debtor's laches cause of action to that practically invariable rule awaits resolution for another day.

in this case.[58] The parties have not cited, and this Court has not found, a decision from a Utah court that has permitted someone in the Debtor's circumstances to use laches to achieve the result he seeks. Despite these concerns, the Court will assume, for purposes of ruling on the MEB's motion only, that laches remains an available remedy for the Debtor, and it will address the sufficiency of the Complaint with respect to that cause of action.

"[T]o prevail on a defense of laches, a defendant must show that (1) the plaintiff—and, in appropriate cases, the plaintiff's predecessors—failed to diligently pursue its claim against the defendant and (2) the defendant was injured by the plaintiff's lack of diligence."[59] Mere delay is insufficient to merit application of laches; it must be "delay that works a disadvantage to another."[60] A court is forbidden from considering "the relative strength or weakness of a plaintiff's underlying claim" when evaluating the two elements of a laches defense.[61] "Laches is designed to shelter a prejudiced defendant from the difficulties of litigating meritorious claims after an unexpected delay."[62] In other words, laches "is a negative equitable remedy which deprives one of some right or remedy to which he would otherwise be entitled, because his delay in seeking it has operated to the prejudice of another."[63]

The Complaint asserts two forms of prejudice. First, the Debtor states that MEB's delay in enforcing its rights under the Note and Trust Deed has resulted in "the loss of records and

---

[58] *Insight Assets, Inc. v. Farias*, 321 P.3d 1021 (Utah 2013) (holding that because the home buyer was understandably unaware of the creditor's asserted lien, and because the creditor failed to take timely action to assert that interest, laches barred the creditor's foreclosure action).

[59] *Estate of Price*, 447 P.3d at 1289 (citing *Insight Assets*, 321 P.3d at 1026 and *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 289 P.3d 502, 510 (Utah 2012)).

[60] *Insight Assets*, 321 P.3d at 1025 (quoting *Mawhinney v. Jensen*, 232 P.2d 769, 773 (Utah 1951)).

[61] *Horne*, 289 P.3d at 510. As explained in Part III.D, *infra*, MEB is the plaintiff for purposes of a laches analysis because its role as a claimant in the Debtor's bankruptcy case is analogous to that of a plaintiff in a non-bankruptcy collection action against the Debtor.

[62] *Id.* at 512 (citing *Hamilton v. Dooly*, 49 P. 769, 773 (Utah 1897)).

[63] *Estate of Price*, 447 P.3d at 1289 (quoting *Horne*, 289 P.3d at 512).

documentation . . . that could support the statute of limitations claim."[64] Second, the Debtor alleges prejudice by the accumulation of interest since 2008.[65] In response, MEB argues that the claim for laches must fail because the Debtor has not alleged sufficient facts to establish how a delay of over thirteen years in enforcing the Note caused him any prejudice.[66] In fact, MEB contends that the Debtor has benefited from this situation because it allowed him to live in the Home for years without making payments. But even if there is prejudice, MEB asserts that it is of the Debtor's own doing, caused by his failure to make mortgage payments and to maintain his records related to the Note and Trust Deed.[67]

Accepting the allegations in the Complaint as true and given the fifteen years that have passed since the last payment on the Note, coupled with the various assignments of the loan, the Court finds it plausible that the delay in the enforcement of the Note and Trust Deed could prejudice the Debtor, including his ability to obtain the evidence necessary to establish an acceleration of the Note.

While the Court is initially less persuaded by the allegation of prejudice arising from the accumulation of interest, it is not on its face an ineffectual assertion given the curious inaction by the prior Note holders before the assignment to MEB in 2021. Therefore, the Court believes the Debtor should be given the opportunity to conduct discovery to determine if the prior Note holders, with a perverse incentive to increase the amount of accrued interest, did not send monthly billing statements and/or delayed an enforcement action.[68] There may be other facts revealed during

---

[64] ECF No. 23, ¶ 42.

[65] *Id.* ¶ 43.

[66] ECF No. 24, at 10.

[67] *Id.*

[68] *See, e.g.*, *Fike v. Med. Ctr. at Bowling Green*, 2021 Ky. App. Unpub. LEXIS 283, at *9 (Ky. Ct. App. May 7, 2021) ("[There can be a] 'perverse incentive' inherent in the statute of limitations, which may incentivize a party to delay action in order to accrue additional interest.").

discovery regarding why the Note holders delayed enforcement of the Note and Trust Deed that would be determinative as to the unreasonableness of the delay and that might give sufficient traction to this allegation of prejudice to support granting relief under the doctrine of laches. For these reasons, the Court will not dismiss the cause of action for laches and will allow the Debtor to conduct discovery in search of evidence on this issue.

> D.　**The Debtor's Adversary Proceeding is a Procedurally Proper Means to Seek the Disallowance or Reduction of MEB's Claim and the Removal of the Trust Deed Lien Based on the Affirmative Defenses of Statute of Limitations and Laches.**

In addition to its arguments under Rule 12(b)(6), MEB has presented two additional grounds for dismissal. The first is that the fourth cause of action is, in substance, a claim objection regarding the balance owing on the Note that should be resolved through the claims allowance process rather than in an adversary proceeding. The second is that statute of limitations and laches are affirmative defenses and cannot be asserted by a plaintiff in a complaint.

A handful of related bankruptcy rules resolves the first argument. Rule 3007(b) allows a party in interest to include a claim objection in an adversary proceeding. Next, Rule 7001(2) requires that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" be commenced as an adversary proceeding. Such relief is indeed the gravamen of the Debtor's Complaint, which is to have the Trust Deed removed as an encumbrance against the Home. However, while a claim objection can be asserted in an adversary proceeding, it cannot include (1) an action under Rule 3012 for the determination of the amount of a secured claim under 11 U.S.C. § 506(a), or (2) an action under Rule 4003(d) to avoid a judicial lien that impairs a homestead exemption under 11 U.S.C. § 522(f).[69]

---

[69] Fed. R. Bankr. P. 7001(2). All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

Clearly, the Rule 4003(d) exception does not apply in this case because § 522(f) only deals with judgment liens and not with consensual liens such as a trust deed. Next, § 506(a) involves the determination of the allowed, secured amount of a claim based on the value of the collateral.[70] In this case, the Debtor is first arguing statute of limitations and laches to "determine the validity, priority, or extent of a lien." These causes of action do not implicate the valuation and bifurcation process of § 506(a). Second, based on the Debtor's accounting analysis, he seeks a determination that the current Note balance does not exceed $49,555.81. Because the value of the Home is not relevant to resolving this accounting dispute, § 506(a) is likewise not implicated. Therefore, the Debtor's causes of action in the Complaint are properly brought in this adversary proceeding under Rule 7001(2).

As for the second argument, while statute of limitations and laches are normally asserted as affirmative defenses to a debt collection complaint, the procedural posture of claim objections is unique to bankruptcy and allows a debtor, even if appearing as a plaintiff in an adversary proceeding, to assert them against a creditor-defendant as if the parties were litigating a collection action outside of bankruptcy court. This is because a proof of claim is analogous to a complaint to collect a debt, *i.e.*, the claim asserts a legally enforceable right to repayment in the stated amount. Correspondingly, an objection to a proof of claim is analogous to an answer to a complaint that asserts affirmative defenses against the enforceability of the claim.[71] While it may appear paradoxical, the defensive nature of a claim objection does not change when a debtor brings it in an offensive capacity as part of a complaint in an adversary proceeding, as permitted by Rule

---

[70] Under § 506(a), a claim can be bifurcated into a secured claim and unsecured claim. For example, if the creditor has a claim for $20,000 secured by a vehicle worth $15,000, the creditor would have an allowed, secured claim of $15,000 and an unsecured claim of $5,000.

[71] *See* § 502(b)(1). This section provides in relevant part that a filed claim is allowed "except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

3007(b). Accordingly, the Debtor's role as plaintiff in this adversary proceeding effectively forces him to plead statute of limitations and laches as causes of action even though they perform the work of affirmative defenses to MEB's asserted Proof of Claim based on its Note and Trust Deed.

In addition, bankruptcy flips the burden of proof as to the enforceability of a debt in that a proof of claim "is deemed allowed, unless a party in interest . . . objects,"[72] and a filed proof of claim is gifted with a rebuttable presumption of allowance.[73] The party objecting to a claim thus "has the burden of going forward with evidence supporting the objection that is of equal probative force as the allegations contained in the proof of claim, after which the claimant will have the burden of persuasion as to the validity and the amount of the claim."[74] The Debtor therefore has the initial burden of proof to establish that MEB's claim is unenforceable under § 502(b)(1). Accordingly, there is nothing procedurally improper in the Debtor asserting as causes of action in his objection to MEB's Proof of Claim the affirmative defenses of statute of limitations and laches.[75]

## IV. CONCLUSION

Accepting the Debtor's allegations in the Complaint as true, the Court finds that they state a plausible basis for the Debtor to obtain full or partial relief under the theories of statute of limitations and laches. Under the standards of Rule 12(b)(6), the motion is denied, and the Debtor will be given the opportunity to discover and establish his alleged facts with admissible evidence.

END OF DOCUMENT

---

[72] § 502(a).

[73] See Fed. R. Bankr. P. 3001(f). ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

[74] *Catalina Dev., Inc. v. Given (In re Crowder)*, No. NM-08-017, 2008 Bankr. LEXIS 2403, at *9-10 (10th Cir. BAP Sept. 24, 2008).

[75] See, e.g., *Claudio v. LVNV Funding, LLC (In re Claudio)*, 463 B.R. 190, 195 (Bankr. D. Mass. 2012) ("Statutes of limitation are affirmative defenses and, in bankruptcy, would be appropriately raised in an objection to a claim.").

———ooo0ooo———

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS COMPLAINT** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| E. Kent Winward | utahbankruptcyfirm@gmail.com, winlawecf@gmail.com, bcsummarymails@gmail.com, r39103@notify.bestcase.com, 3920@notices.nextchapterbk.com, 3295273420@filings.docketbird.com, casedriverecf@casedriver.com, casedriverecfg@gmail.com |
| Jacob D. Barney | jbarney@buchalter.com |
| R. Chad Pugh | cpugh@buchalter.com, docket@buchalter.com |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).